UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Refrigerant Compressors                    Case No. 2:09-md-02042
Antitrust Litigation

                                                   Honorable Sean F. Cox
                                                   United States District Court

_____/

## OPINION & ORDER

        The Indirect Purchaser and Direct Purchaser putative class action cases in this

multidistrict litigation ("MDL") proceeding have been resolved.  All that remains in this MDL

proceeding is Plaintiff General Electric Company's ("GE") individual claims.  GE asserts claims

against Defendants Danfoss A/S, Danfoss Flensburg GmbH, and Danfoss, LLC (collectively the

"Danfoss Defendants").  GE is pursuing its claims against the Danfoss Defendants on its own

behalf after having opted out of the Direct Purchaser Class Action Settlement.[1]

        The matter is currently before the Court on a "Motion By Defendants Danfoss Flensburg

GMBH And Danfoss LLC To Dismiss The Complaint" (Docket Entry No. 470/64) which asserts

several grounds for relief.  The parties have briefed the issues.  The Court finds that oral

argument would not aid the decisional process at this time.

        For the reasons set forth below, with respect to GE's federal antitrust conspiracy claims,

the Court:  1) declines to rule on two issues (whether GE has federal antitrust standing to assert

claims based on MABE purchases and whether those purchases are barred under the Foreign

_____

        [1]GE asserted claims against the Whirlpool Defendants but those claims have been settled.
GE also asserts claims against the ACC Defendants and GE has a default judgment as to liability
against ACC.

1

Trade Antitrust Improvement Act) until after the parties have had the opportunity to file supplemental briefs addressing the Seventh Circuit's recent decision in *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816 (7th Cir. Jan. 12, 2015); 2) rules that GE is not entitled to tolling under the "*American Pipe* tolling doctrine;" 3) rules that GE is entitled to Section 5(i) tolling; 4) rejects Defendants' argument that GE cannot pursue damages for the time period after February 2009; and 5) rules that GE has sufficiently alleged fraudulent concealment for the time period preceding September 2006.

With respect to GE's state-law fraud and conspiracy claims, the Court: 1) rules that GE's state-law fraud claim is barred by the applicable statute of limitation; and 2) rejects Defendants' statute of limitations challenge to the state-law conspiracy count.

Finally, the Court finds Defendant Danfoss Flensburg GmbH's personal jurisdiction challenge without merit.

## BACKGROUND

There is a lengthy history to this MDL proceeding.  The Court includes here only those facts that are relevant for the purposes of the pending motion.

GE filed its Complaint on February 15, 2013, in the United States District Court for the Western District of Kentucky, Louisville Division.  The action was transferred to this Court by a June 17, 2013 Order of the United States Judicial Panel on Multidistrict Litigation, which transferred the action to this Court for inclusion in the coordinated or consolidated pretrial proceedings in this MDL proceeding, which began in 2009.

GE's eighty-three page Complaint asserts claims against three different groups of Defendants: 1) the "Embraco Defendants," which include Whirlpool Corporation, Whirlpool

S.A., and Embraco North America, Inc.; 2) the "Danfoss Defendants," which include Danfoss

A/S, Danfoss Flensburg GMBH, and Danfoss, LLC; and 3) the "ACC Defendants," which

include Household Compressors Holding SpA, and ACC USA, LLC.  GE's Complaint

summarizes the nature of the action as follows:

1.  This lawsuit arises from a long-standing cartel created, maintained, and enforced by the Defendants and their co-conspirators (collectively, the "Conspirators") for anticompetitive acts and behavior. They have agreed to, and in fact did, illegally inflate, raise, fix, and artificially stabilize the price of refrigerant compressors sold in the United States and elsewhere in the world. The Defendants also have agreed to, and in fact did illegally, restrict capacity, restrict innovation, stabilize market shares, allocate customers, territories, and product types, and otherwise restrain competition in the manufacture and sale of refrigerant compressors in the United States and elsewhere in the world. The result of the Conspirators' conduct has been to raise the prices paid by their customers, including Plaintiff, to supra-competitive levels, reducing the attractiveness of their customers' products in terms of price and quality, and thereby damaging their customers' businesses. The cartel started at least as early as January 1, 1996 and the cartel and its effects will continue at least into 2013 (the "conspiracy period"). The exact dates of the conspiracy period are not known to Plaintiff, but are likely to be revealed during the course of discovery in this litigation.

2.  A refrigerant compressor, in the context of this case, is a device that compresses a refrigerant gas. When the gas is later permitted to expand, it absorbs and thereby transfers heat, producing a cooling effect used in a wide variety of refrigeration products. For example, refrigerant compressors are used in household refrigerators, in which the compressors are part of the system that creates cold air that keeps food fresh or frozen.

3.  During the conspiracy period, Defendants and their co-conspirators Tecumseh and Panasonic have dominated the global and U.S. markets for refrigerant compressors. Indeed, the three largest suppliers to the U.S. market – Embraco, Panasonic, and Tecumseh – had as of 2008 a collective market share in the United States of approximately 85%.

4.      Plaintiff General Electric Company is one of the largest manufacturers and
sellers of refrigeration equipment in the United States. As such, it is one of
the largest purchasers of refrigerant compressors in the United States.
Plaintiff General Electric Company has been a target and a victim of the
Conspirators' cartel. In particular, Plaintiff is one of the largest
manufacturers of household refrigerators in the United States and globally,
and throughout the conspiracy period, household refrigerators
manufactured and/or sold by Plaintiff have included refrigerant
compressors supplied by Conspirators. As a result of the cartel, Plaintiff
has paid supra-competitive prices for compressors and has been deprived
of innovation that would have resulted in increased efficiency, as well as
increased sales and profits, in its sales of refrigerators and other
refrigeration equipment.

(Compl. at 1-2).

GE's Complaint alleges a longer conspiracy period than did the Direct Purchaser or the

Indirect Purchaser Plaintiffs – one that begins in 1996.

GE's Complaint asserts three causes of action:  1) "Violation of Section 1 of the Sherman

Act, 15 U.S.C. § 1," its First Cause of Action; 2) "Fraud," its Second Cause of Action; and 3)

"Conspiracy," its Third Cause of Action.

GE's Complaint contains allegations regarding "MABE purchases" that are relevant to

issues in the motion.  GE's Complaint alleges that, throughout the conspiracy period, "GE has

been a minority owner of a joint venture named Controladora Mabe, S.A. de C.V. ('MABE')."

(Compl. at ¶ 46).  GE alleges that "[d]uring the conspiracy period (and today), GE has owned

(and today owns) slightly more than 48% interest in MABE.  GE also has minority

representation on MABE's board of directors, and a veto right with respect to some" unspecified

"categories of board decisions."  (*Id*.).

GE alleges that as part of its joint venture relationship with GE, during the conspiracy

period MABE has manufactured residential refrigerators for GE for sale in the United States

4

pursuant to contract manufacturing agreements between GE and Mabe." (Compl. at ¶ 47). It also alleges that GE's procurement teams in the United States have controlled and determined the price and quantity of refrigerant compressors MABE has incorporated into refrigerators it has manufactured for sale by GE in the United States.

## STANDARD OF DECISION

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1948 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997)).

## ANALYSIS

The Motion to Dismiss filed by Danfoss Flensburg and Danfoss LLC contains several challenges to GE's Complaint.

## I.   Challenges To GE's Ability To Assert Claims for Mabe's Compressor Purchases

During the course of briefing the pending motion, Defendants raised the issue of whether GE has federal antitrust standing to assert claims based on MABE purchases and whether those purchases are barred under the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6(a) (the "FTAIA").

After the primary briefs had been filed, both parties continued to seek leave to file additional briefs, which were based on *Motorola Mobility, Inc. v. AU Optronics Corp*, 2014 WL 258154 (N.D. Ill. Jan. 23, 2014) and developments relating to it.

As the parties noted in their briefs, Motorola filed a petition for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), from the district court's order. The United States Court of Appeals for the Seventh Circuit granted the petition for interlocutory appeal. In a decision issued on March 27, 2014, without holding oral argument, a three-judge panel of the Seventh Circuit affirmed the district court's order. But in a subsequent order, the Panel stated that it had decided to rehear the appeal and vacated its prior opinion. The Panel took that action after having received an amicus curiae brief from the United States, filed jointly by the Federal Trade Commission and the Departments of State, Commerce and Justice. The Seventh Circuit recently issued its amended decision in that case. *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816 (7th Cir. Jan. 12, 2015).

Given the numerous briefs filed by the parties devoted to the *Motorola* decision, and its recent developments, this Court declines to rule on the these two issues (whether GE has federal antitrust standing to assert claims based on MABE purchases and whether those purchases are barred under the FTAIA) until after both parties have had an opportunity to file a supplemental brief addressing *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816 (7th Cir. Jan. 12,

2015).  Defendants shall file a supplemental brief, of no more than eight (8) pages, addressing the above issues and case, no later than **April 3, 2015**; and 2) GE shall file a supplemental brief, of no more than eight (8) pages, addressing the above issues and case, no later than **April 3, 2015**.

## II.   Are GE's Antitrust Claims Barred By The Statute of Limitations?

Pursuant to the Clayton Act, 15 U.S.C. § 15(a), private parties may bring private actions for violation of the Sherman Act.  *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 401 (6th Cir. 2012).  The controlling section of the statute provides that "[a]ny action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued."  15 U.S.C. § 15b.

GE filed this action on February 15, 2013.  The parties agree that, without tolling, GE's Sherman Act claims may reach back to February 15, 2009.  (*See* Defs.' Br. at 7; Pl.'s Br. at 6).  The pending motion addresses whether various types of tolling may be applied to extend GE's antitrust claims.

### A.   Does *American Pipe* Toll The Statute Of Limitations For GE's Antitrust Claims?

The first putative class action brought on behalf of direct purchasers, which was later transferred to this Court, was filed on February 25, 2009.  GE filed its own action on February 15, 2013.  GE's action was filed after the putative class actions were filed and transferred to this Court in this MDL proceeding, but before the motion seeking approval of the Direct Purchaser class action settlement had been filed or granted.  This Court preliminarily approved the Direct Purchaser settlement class on January 9, 2014, and granted final approval on June 16, 2014.

(Docket Entry Nos. 460 & 495).

In their motion, Defendants contend that the *American Pipe*[2] tolling doctrine does not toll the statute of limitations for GE's antitrust claims in its independent action that was filed on February 15, 2013.

Under the *American Pipe* tolling doctrine, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414 U.S. at 554. As explained by one of the leading treatises on class actions:

> In *American Pipe* and *Crown*, *Cork*, the Supreme Court addressed the statute of limitations as it applied to putative class members who pressed their claims *after* the district court ruled on class certification. However, the Supreme Court has never addressed the question of whether the *American Pipe* doctrine inures to the benefit of plaintiffs who choose to bring individual actions in the time period that begins at the filing of the class action complaint and ends when the trial court denies class certification.
>
> The lower courts conventionally held that, given the policy rationales that underlie it, *American Pipe* does *not* apply to putative class members who commence individual actions before the district court rules on class certification. This approach is known as the "forfeiture rule" as these courts hold that the plaintiff who files in this precertification decision period has "forfeited" her opportunity to rely on *American Pipe*. Why? *First*, when a plaintiff files his own lawsuit, he "affiirmatively demonstrate[s] his choice not to rely on the class action mechanism." *Second*, the early-filing plaintiff "create[s] the very inefficiency that *American Pipe* sought to prevent – he generate[s] more litigation and expense concerning the same issues that were litigated by a class of which he was a member.

NEWBERG ON CLASS ACTIONS §9:63 (5th Ed.) (emphasis in original) (citations omitted).

"Despite the rationale for the forfeiture rule, courts have not universally adopted it.

---

[2]*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

8

Creating the 'non-forfeiture rule,' a number of courts have held that *American Pipe* does, in fact, apply to putative class members who commence individual actions before the district court rules on class certification." *Id*. (citing several cases, including *In re Hanford Nuclear Reservation Litig*., 534 F.3d 986, 1009 (9th Cir. 2008) and *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1232 (10th Cir. 2008)).

In opposing Defendants' motion, GE relies on *In re Hanford Nuclear Reservation Litig*. and *State Farm Mut. Auto. Ins. Co. v. Boellstorff* and asserts that, if presented with this issue, the Sixth Circuit would follow those decisions and hold that class-action tolling applies to an individual suit filed before class certification. (Pl.'s Br. at 18).

Defendants, however, direct the Court to two Sixth Circuit cases that shed light on how the Sixth Circuit might rule on this issue: 1) *Wyser-Pratte Mgmt. Co. v. Telxon Corp*., 413 F.3d 553 (6th Cir. 2005); and 2) *In re Vertrue Inc. Mktg. & Sales Practice Litig.,* 719 F.3d 474 (6th Cir. 2013).

In *Wyser-Pratte Mgmt. Co.,* the Sixth Circuit agreed with those courts that have concluded that class-action tolling applies only after a ruling on class certification:

> While our research reveals no circuit court decisions addressing this "forfeiture" argument, a number of district courts have held that a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine. The reasoning rests in part on the holding in *Crown* that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." 462 U.S. at 354, 103 S.Ct. 2392. The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided. One district court explained:

9

> Many good purposes are served by such forbearance, as *American Pipe* and *Crown*, *Cork* themselves spell out. The parties and courts will not be burdened by separate lawsuits which, in any event, may evaporate once a class has been certified. At the point in a litigation when a decision on class certification is made, investors usually are in a far better position to evaluate whether they wish to proceed with their own lawsuit, or to join a class, if one has been certified.

> *In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 431, 452 (S.D.N.Y.2003) (citing cases), *reconsid. denied*, 308 F.Supp.2d 214, 230 (S.D.N.Y.2004). As is exemplified by *In re Worldcom*, this limitation on class action tolling has taken hold in a number of district courts, with no courts rejecting it, and is not a new proposition. *See, e.g., In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F.Supp.2d 188, 221 (E.D.N.Y.2003); *Rahr v. Grant Thornton LLP*, 142 F.Supp.2d 793, 800 (N.D.Tex.2000); *Stutz v. Minn. Mining & Mfg. Co.*, 947 F.Supp. 399, 404 (S.D.Ind.1996); *Wachovia Bank & Trust Co. v. Nat'l Student Mktg. Corp.*, 461 F.Supp. 999, 1012 (D.D.C.1978). **The reasoning supporting this approach is both sound and persuasive**. Even if the limitations period did not commence until July or August 1999, we find in the alternative that WPMC may not rely on the PwC class action to suspend the limitations period on its fraud claims against PwC.

*Wyser-Pratte Mgmt. Co.*, 413 F.3d at 568-69 (emphasis added); *see also In re Vertrue Inc. Mktg. & Sales Practice Litig.,* 719 F.3d at 480 (noting that in *Wyser-Pratte Mgmt. Co.*, "we held that 'a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine.'")

GE attempts to minimize the decision in *Wyser-Pratte Mgmt. Co.* because one of the district court decisions the Sixth Circuit relied on, *In re WorldCom, Inc. Sec. Litig.*, was later reversed by the Second Circuit. But that was not the only decision that the court relied on and, more importantly, regardless of what the Second Circuit later decided, the Sixth Circuit found that the "reasoning supporting this approach" to be "both sound and persuasive." *Wyser-Pratte Mgmt. Co.*, 413 F.3d at 569.

10

This Court concludes that GE is not entitled to tolling under the *American Pipe* tolling

doctrine because GE filed its own action after the putative Direct Purchaser actions were filed

but before there was any determination as to class action in this MDL proceeding.

**B.     Does Section 5(i) Tolling Apply?**

GE also contends that Section 5(i) of the Clayton Act extends GE's damages period back

to September 2006.  (Pl.'s Br. at 16).

The section at issue, Section 5(i) of the Clayton Act, governs "suspension of limitations"

and provides as follows:

(i) Suspension of limitations

Whenever any civil or criminal proceeding is instituted by the United States to
prevent, restrain, or punish violations of any of the antitrust laws, but not
including an action under section 15a of this title, the running of the statute of
limitations in respect to every private or State right of action arising under said
laws and **based in whole or in part on any matter complained** of in said
proceeding shall be suspended during the pendency thereof and for one year
thereafter: *Provided, however*, That whenever the running of the statute of
limitations in respect of a cause of action arising under section 15 or 15c of this
title is suspended hereunder, any action to enforce such cause of action shall be
forever barred unless commenced either within the period of suspension or within
four years after the cause of action accrued.

15 U.S.C. § 16(i) (italics in original; bolding added for emphasis).  As concisely explained by the

district court in *In re Microsoft Corp. Antitrust Litig., Inc*., 2005 WL 1398643 (D. Md. 2005):

The broad principles governing the tolling issue may be briefly stated. The
governing test is whether the matters complained of in the private action "bear a
real relation" to a matter complained of in the government suit. *Leh v. Gen.
Petroleum Corp*., 382 U.S. 54, 59, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965). "The
private plaintiff is not required to allege that the same means were used to achieve
the same objectives of the same conspiracies by the same defendants," *id*. at 59,
but simply must allege "a significant, although incomplete, overlap of subject
matter" to toll the statute, "even as to the differences." *Morton's Market, Inc. v.*

11

*Gustafson's Dairy, Inc*., 198 F.3d 823, 830 (11th Cir.1999). "In general, consideration of the applicability of ... [section 16(i)] must be limited to a comparison of the two complaints on their face." *Leh*, 382 U.S. at 65; *Greyhound Corp. v. Mt. Hood Stages, Inc*., 437 U.S. 322, 331, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978). FN2 Section 16(i) is not to be given a "niggardly construction" and must be "read in light of Congress' belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." *Leh*, 382 U.S. at 59 (quoting *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 318, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965)).

*In re Microsoft Corp. Antitrust Litig., Inc*., 2005 WL 1398643 (D. Md. 2005).

GE's Complaint alleges as follows as to the issue of whether Section 5(i) of the Clayton

Act tolls the limitations period:

132.    . . . the limitations periods are tolled under Section [5(i)] of the Clayton Act . . .

133.    Tolling under Section [5(i)] began on September 20, 2010, when the DOJ initiated criminal proceedings against Panasonic Corp. and Embraco NA. Those criminal proceedings terminated on November 23, 2010 and January 6, 2011, respectively.  Accordingly, absent the filing of any further related criminal proceedings, the limitations period was extended until January 6, 2012.

134.    On September 27, 2011, the DOJ initiated related criminal proceedings against Messrs. Verissimo, Ernesto Heinzelmann, and Adachi.  As this criminal proceeding was filed prior to January 6, 2012, it had the effect of extending the already-existing tolling period under Section [5(i)].  The criminal proceeding against Messrs. Verissimo, Ernesto Heinzelmann, and Adachi is still pending and hence the tolling period under Section [5(i)] has not concluded.

135.    On October 4, 2011, the DOJ commenced related criminal proceedings against Danfoss Flensburg, which were terminated December 19, 2011.  Absent the filing of another related criminal proceeding, the limitations period was extended under Section [5(i)] until December 19, 2012.  However, because of the pending criminal proceeding against Messrs. Verissimo, Ernesto Heinzelmann, and Adachi, the tolling period under Section [5(i)] did not conclude on December 19, 2012, and to the date of filing this Complaint has not concluded.

(GE's Compl. at 42-43).

12

GE's response to the pending motion appears to acknowledge that, in order for its damages period to extend back to to September 2006, the Court must find that Section 5(i) tolling based on the "Heinzelmann Action" is appropriate.

In Criminal Case No. 11-20605, the following three individuals were indicted and charged with conspiracy to restrain trade in violation of the Sherman Antitrust Act: 1) Ernesto Heinzelmann; 2) Gerson Verissimo; and 3) Naoki Adachi.  (*See* Criminal Case No. 11-20605, Docket Entry No. 1).  Those three individuals are former executives of the Embraco, Tecumseh, and Panasonic Defendants.  The case is pending before Judge Bernard Friedman.  The Indictment describes the charged offense as follows:

> 2.  Beginning at least as early as October 14, 2004, and continuing until on or about December 31, 2007, the exact dates being unknown to the Grand Jury, the defendants ERNESTO HEINZELMANN, GERSON VERISSIMO, and NAOKI ADACKI, and other co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices of refrigerant compressors to customers in the United States and elsewhere.  The combination and conspiracy engaged in by the defendants . . .  was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).
>
> 3.  The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators, the substantial terms of which were to fix prices by coordinating price increases of refrigerant compressors in the United States and elsewhere.

(*Id*. at 2).  That criminal case is still open but the Indictment is the only thing found on the docket.

The Danfoss Defendants contend that GE is not entitled to Section 5(i) tolling, based on the Heinzelmann Action, for two reasons.  First, Defendants argue that there is an insufficient

13

overlap between GE's Complaint in this case and the Indictment in the Heinzelmann Action. Second, given the status of the Heinzelmann Action, the Danfoss Defendants argue that to allow tolling based upon it would violate the purposes behind the tolling provision.

The first argument can be disposed of quickly.  In arguing that there is insufficient overlap, Defendants note that GE's Complaint alleges a longer conspiracy period than is alleged in the criminal action and that GE's Complaint alleges additional conduct not alleged in the criminal action.  But there only needs to be limited overlap and a "private action that is substantially broader than a prior Government action may still benefit from § 16(i) tolling where the allegations in the private action incorporate the subject matter of the Government action." *Hinds County, Miss. V. Wachovia Bank, N.A.*, 895 F.Supp.2d 617, 627 (S.D. N.Y. 2012) (citing *In re Antibiotic Antitrust Actions*, 333 F.Supp. 317, 321 (S.D.N.Y.1971); *see also Zenith Radio*, 401 U.S. 321, 91 S.Ct. 795 and *In re Scrap Metal Antitrust Litig*., No. 02 Civ. 0844, 2006 WL 2850453, at *22 (N.D.Ohio 2006)).

Defendants' second argument focuses on the fact that since the Indictment was filed on September 27, 2011 – several years ago  – there has been no activity in the Heinzelmann Action. Defendants assert that the Indictment is "not an indictment; it is an assurance of exile.  This indictment may, as a narrow technical matter, remain open until the last of the indictees dies, but there is no realistic possibility the case will ever proceed."  (Defs.' Br. at 11).  Defendants contend that, as a result of this situation, to allow tolling based on the Heinzelmann Action would violate the purposes behind Section 5(i) tolling.

Unfortunately, the parties have not cited, and this Court has been unable locate, any Sixth Circuit cases discussing Section 5(i) tolling.

Directing the Court to various other courts, Defendants contend that the purposes behind Section 5(i) do not supporting tolling here.  They contend Section 5(i)'s purposes are:  1) "to permit private claimants to obtain the benefit of the evidence and legal rulings involved in the Government's action" (Defs.' Br. at 10); and 2) to further the goals of "certainty and predictability" as to limitations periods. (*Id*. at 11).

But the parties have not cited, and this Court has not found, any decisions that deal with this narrow issue – whether Section 5(i) tolling applies when there is a related indictment but the persons indicted are fugitives and that case is not actively proceeding.

There is authority to support the Danfoss Defendants' position as to the purposes behind Section 5(i) tolling.  *See, e.g., Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F.Supp. 84, 86 (D. Haw. 1985) ("Section 5(i) was enacted for two purposes.  The first was to ensure that private litigants would have the benefit of prior Government antitrust enforcement efforts.  The second was to create a more certain running of the statute of limitations.") (citing *Greyhound Corp. v. Mt. Hood Stages, Inc*., 437 U.S. 322, 333-34 (1978)).

Defendants assert that, because the Indictment in the Heinzelmann Action "is likely to remain open indefinitely," that action will not provide any evidentiary assistance to GE that would benefit it in this case.  But that argument, of course, assumes that the Heinzelmann Action will not proceed.  We do not know that is the case.  Indeed, GE attached an April 4, 2014 Press Release from the Department of Justice (Ex. 16 to Schnorrenberg Decl.) that states that an Italian national was recently extradited from Germany on a charge of participating in a price-fixing conspiracy.  Thus, a prior criminal action that had been filed on August 26, 2010 is proceeding after being on hold for several years.

15

The Danfoss Defendants correctly note that the Supreme Court has recognized that one of the goal's of Section 5(i) is to ensure certainty and predictability as to the application of the statue of limitations:

> The Senate Report accompanying the 1955 amendments reflects congressional policy against "undue prolongation of [antitrust] proceedings" by extending the limitations period. It noted:
>
> "While the committee believes it important to safeguard the rights of plaintiffs by tolling the statute during the pendency of Government antitrust actions, it recognizes that in many instances the long duration of such proceedings taken in conjunction with a lengthy statute of limitations may tend to prolong stale claims, unduly impair efficient business operations, and overburden the calendars of courts. The committee believes the provision of this bill will tend to shorten the period over which private treble-damage actions will extend by requiring that the plaintiff bring his suit within 4 years after it accrued or within 1 year after the Government's case has been concluded.
>
> "While the committee considers it highly desirable to toll the statute of limitations during a Government antitrust action and to grant plaintiff a reasonable time thereafter in which to bring suit, it does not believe that the undue prolongation of proceedings is conducive to effective and efficient enforcement of the antitrust laws." S.Rep.No. 619, 84th Cong., 1st Sess., 6 (1955), U.S.Code Cong. & Admin.News 1955, pp. 2328, 2332.

*Greyhound Corp*., 437 at 335.

But a closer reading of the *Greyhound Corp.* case causes this Court to question whether this Court should look past the plain language of Section 5(i), and consider the purposes behind the section, at all. In that case, the trial court held that the Government's petition to intervene in an Interstate Commerce Commission ("ICC") proceeding served to toll the statute of limitations under Section 5(i). The United States Court of Appeals for the Ninth Circuit affirmed. The United States Supreme Court disagreed and held that the Clayton Act's statute of limitations was not tolled, under Section 5(i), by the Government's petition to intervene in the ICC proceeding.

16

*Id*. at 336-37.  The Court explained:

> In holding that the United States' intervention in the ICC proceeding served to toll, by reason of § 5(i), the Clayton Act's period of limitations, the Court of Appeals stated that "[t]he literal wording of section [5(i)] is not controlling." 555 F.2d, at 699. The court, therefore, sought to identify the congressional purpose behind § 5(i) and to effectuate that purpose. 555 F.2d, at 699. In the court's view, the purpose of § 5(i) "is to further effective enforcement of the antitrust laws by permitting private litigants to have the benefits that may flow from governmental antitrust enforcement efforts." 555 F.2d, at 699. The Court of Appeals, quoting the District Court (App. 80), declared that this purpose would be advanced by "'treating intervention by Antitrust Division lawyers as the functional equivalent of a direct action by them.'" 555 F.2d, at 700.

> We find this reasoning unpersuasive. In particular, we are unable to agree that the language of § 5(i) is so unhelpful.

*Id*. at 330.  "Logic and precedent dictate that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Id*. (citations omitted).  "Section 5(i) begins: 'Whenever any civil or criminal proceeding is *instituted by the United States* . . .'"  *Id*. at 330-31 (emphasis added).  "[A]s the Court of Appeals acknowledged, 'Mt. Hood rather than the United States instituted the proceedings.'" *Id*.  The Court concluded that it "strains accepted usage to argue that a party who intervenes in a proceeding instituted by someone else has also 'instituted' that proceeding." *Id*. at 331.  The Court further concluded that "[j]ust as the United States cannot be said to have 'instituted' the ICC proceeding, neither had it 'complained of,' within the meaning of § 5(i), anything on which the present action is based." *Id*.  The Court went on to also reject the Government's arguments as to tolling being justified by the intent in enacting the statute.  But the opinion is clear that the Court concluded that the district court and appellate court should not have gone beyond the language of the statute.

Here, as in *Greyhound*, Defendants argue that the literal wording of the statute should not

control and the Court should look to the intent behind the statue.

As *Greyhound* instructs, however, logic and precedent dictate that the starting point of this Court's analysis is the language of the statute itself.  Here, Section 5(i) provides, in pertinent part, that "**[w]henever** any civil or **criminal proceeding is instituted by the United States** to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding **shall be suspended during the pendency thereof** and for one year thereafter." 15 U.S.C. § 16(i) (bolding added for emphasis).  Congress could have limited the applicability of Section 5(i) in situations like this but it did not do so. Rather, the statute contains the all-inclusive word "whenever" a criminal action is instituted by the United States and uses the mandatory word "shall" as to tolling of the limitations period "during the pendency" of the action.  The Government initiated a criminal action in the Heinzelmann action and that action is still pending.  Thus, tolling appears to be required under the plain language of the statute.

Given the lack of authority addressing the situation seen in this case, and in light of the plain language of the statute, this Court concludes that GE is entitled to Section 5(i) tolling.

### C.     Other Challenges To GE's Antitrust Conspiracy Claims

Given the above rulings, government-suit tolling under Section 5(i) means that GE can assert damage claims back to September 2006.  But this Court still must consider two other challenges as to the period covered by the antitrust conspiracy claims.

### 1.     Damages Claimed For Time Period After February 2009

18

In their motion, Defendants ask the Court to rule that GE cannot pursue damages for the period after February 2009 for two reasons.

First, Defendants contend that "[f]or the time period after February 2009, GE's Complaint fails to meet *Twombly* because it fails to provide a single fact that supports the notion that the conspiracy continued after February 2009 and it is simply implausible that Defendants continued to conspire to fix the price of refrigerant compressors sold in the U.S. and elsewhere after the DOJ, EC, and SDE began investigating Defendants for anticompetitive practices in the refrigerator compressor industry and after multiple treble damage class actions were filed." (Defs.' Br. at 16). Defendants rely on, as they did previously in this MDL action, on *In re Urethane Antitrust Litig.*, 663 F.Supp.2d 1067 (D. Kan. 2009).

The Court rejects this challenge, as it did in ruling on a prior motion to dismiss in the Direct Purchaser case:

> This Court shall deny Defendant' request to dismiss claims prior to June 2004, or after December 2006, under *Twombly*.
>
> In order to survive a motion to dismiss, DP Plaintiffs must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "In *Twombly*, the Supreme Court held that a complaint alleging violations under § 1 of the Sherman Act cannot survive a motion to dismiss unless it avers facts that raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *In re Travel Agent Commission Antitrust Litigation*, 583 F.3d 896, 902 (6th Cir.2009). Under *Twombly*, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Of course [the court] must still 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.' " *Id.* "Yet, to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.* (internal quotation and citation omitted). *Twombly* does "not require

heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

Defendants' request is based primarily on *In re Urethane Antitrust Litig.*, 663 F.Supp.2d 1067 (D.Kan.2009)—a district court case from outside the Sixth Circuit. In that case, the district court concluded that the plaintiffs' allegations regarding the existence of a conspiracy were sufficient for a period of time beginning in 1999. The district court agreed with the defendants, however, that the plaintiffs "failed to state a cause of action for antitrust liability under the *Twombly* standard for the period prior to 1999." *Id.* at 1076. In that case, the district court stated that:

> Under *Twombly,* plaintiffs cannot simply allege a conspiracy beginning at a particular time; rather, they must allege facts to support the existence of a conspiracy during the entire period. Plaintiffs may not need to allege meetings occurring at any particular intervals; they must at least provide a factual basis for their starting date, however, in order to show an entitlement to relief beginning on that date. Plaintiffs have not done so here; accordingly, plaintiffs have not stated a claim for antitrust liability (under either the federal or state statutes or European law) for the period from 1994 to 1998, and therefore such claims are subject to dismissal.

*Id.* at 1077.

The district court in *In re Urethane Antitrust Litig.* acknowledged, in a footnote, that the "parties have not pointed the court to any other case in which the defendants attempted to carve out a portion of the alleged conspiracy in this manner." *Id.* at 1077 n. 6. Thus, the ruling in that case is hardly a main-stream position. Defendants have not identified any Sixth Circuit decisions that support that approach.

Moreover, this Court concludes that *Twombly* does not support such a "dismemberment" or "carve out" approach to assessing the sufficiency of a complaint. *Twombly* does "not require heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Here, the MAC contains direct or inferential allegations respecting all material elements to sustain a recovery under the Sherman Act. Thus, under *Twombly,* DP Plaintiffs have stated a claim to relief

20

under the Sherman Act.

*In re Refrigerant Compressors Antitrust Litig.*, 795 F.Supp.2d 647, 660-61 (E.D. Mich. 2011); *see also In re Pressure Sensitive Labelstock Antitrust Litig*., 566 F.Supp.2d 363, 374 (M.D. Pa. 2008) ("[n]othing in *Twombly* . . . contemplates this 'dismemberment' approach to assessing the sufficiency of complaint.'").

Second, Defendants assert that GE's claims for damages for the post-February 2009 period fail because GE has not sufficiently alleged fraudulent concealment. (Defs.' Br. at 16).

As GE notes in its response, however, "GE does not need tolling to reach damages within four years of filing. *See* 15 U.S.C. §15b." (Pl.'s Br. at 10). Because GE filed its action on February 15, 2013, even without any tolling, it can pursue damages back to February 15, 2009. As such, the Court finds this challenge without merit.

### 2.    Damages Claimed For Time Period Preceding September 2006

As explained above, GE is not entitled to tolling under *American Pipe*, but because government-suit tolling under Section 5(i) applies, GE can seek damages back to September 2006. In order to assert claims for damages before September 2006, extending back to 1996, GE must sufficiently allege fraudulent concealment.

As explained by the Sixth Circuit in *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012):

> "Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975). A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity. *Friedman v. Estate of Presser*, 929

21

F.2d 1151, 1160 (6th Cir.1991).

*Carrier Corp.*, 673 F.3d at 446.  Notably, *Carrier* was issued after this Court ruled on the Motion to Dismiss in the DP case.

Defendants' motion asserts that GE has failed to allege the wrongful concealment and due diligence elements of fraudulent concealment.

### a.      Wrongful Concealment

"With regard to the 'wrongful concealment' element the plaintiff must point to 'affirmative acts of concealment.' " *Carrier Corp.,* 673 F.3d at 446 (citing *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 319 (6th Cir. 2007)). "[M]ere silence or unwillingness to divulge wrongful activities is not sufficient." *Browning v. Levy,* 283 F.3d 761, 770 (6th Cir.2002).  "Instead, there must be some 'trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Carrier Corp.*, 673 F.3d at 446-47 (citations omitted).

In *Carrier*, the Sixth Circuit distinguished, as to wrongful concealment, those allegations that lacked specificity from those that met the applicable standard.  As Judge Battani acknowledged in a post-*Carrier* decision looking at this issue, the allegations found to be sufficient for wrongful concealment in *Carrier* "were not extensive."  *In re Automotive Parts Antitrust Litig.,* 2014 WL 4272772 at *12 (E.D. Mich. 2014).  In *Carrier*, the Sixth Circuit stated:

> Here, Carrier's complaint points to numerous instances in which the conspirators actively tried to hide their conduct. Some of these allegations lack any specificity, and therefore fall short of meeting the standard required to support a claim of fraudulent concealment. For instance, the complaint alleges that in 2001, after the EC began investigating Outokumpu, Outokumpu denied any wrongdoing. As stated above, however, an unwillingness to provide information is not an "affirmative act." Furthermore, the complaint alleges that

22

the Defendants "utiliz[ed] covert meetings" and "[gave] false and pretextual reasons for the pricing of ACR Copper Tubing sold ... during the Relevant Period and [described] such pricing falsely as being the result of competitive factors rather than collusion." J.A. at 0051–52 (Am. Compl. ¶ 104(a), (c)). This also lacks the requisite particularity, as it fails to specify "the time, place, and content of the alleged" fraudulent acts. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 505 (6th Cir.2007) (internal quotation marks omitted).

       Other portions of the complaint, however, provide specific details regarding the nature of the alleged cover-up. For example, the complaint quotes the EC's findings that the conspirators "'established security rules to prevent a paper trail ... and used a coding-system to hide the identity of the producers in their documents and spreadsheets.'" J.A. at 0052 (Am. Compl. ¶ 105). In contrast to those discussed above, these allegations—especially when coupled with the details referenced in the cited portion of the EC decision and associated cross-references—are sufficiently particular to meet the pleading standard for fraudulent concealment. See J.A. at 0330 (EC ACR Dec. ¶ 218); *In re Elec. Carbon Prods. Antitrust Litig*., 333 F.Supp.2d 303, 316 (D.N.J.2004) (concluding that a plaintiff "injected precision" into its fraudulent-concealment claim "by pleading the findings of the United States Department of Justice and the European Commission" (internal quotation marks omitted)). Furthermore, such conduct is sufficiently affirmative for purposes of satisfying the "wrongful concealment" element because the alleged actions involved taking active steps to hide evidence, as opposed to simply meeting in secret. *See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir.2004) (explaining that "hiding evidence" can constitute affirmative concealment). Finally, Carrier alleges that because of the co-conspirators' misstatements and attempts at suppressing evidence of illegal conduct, it had no knowledge of the Defendants' conspiracy until the release of the EC decision on December 16, 2003. Taken as true, these actions would have both concealed from Carrier the very "means of discovering [its] cause of action," *Campbell*, 676 F.2d at 1127, and prevented Carrier from discovering the basis for its antitrust claim within the limitations period. Carrier has thus adequately pleaded the first two prongs of a fraudulent-concealment claim.

*Carrier Corp.,* 673 F.3d at 447-48.

       Moreover, as GE notes in its papers, it does not have to be the Danfoss Defendants who engaged in the relevant concealment because "[f]raudulent concealment . . . may be established through the acts of co-conspirators." *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 538 (6th

Cir. 2008); *see also Carrier*, 673 F.3d at 447 n.8 (citing that case); *In re Automotive Parts Antitrust Litig.,* 2014 WL 4272772 at *12 (E.D. Mich. 2014).  Thus, to the extent that the Danfoss Defendants argue that GE has not identified wrongful concealment by them, that argument must be rejected.  In looking at the alleged wrongful concealment, the Court is to consider the alleged wrongful concealment by any of the alleged co-co-conspirators because those acts can be imputed to the Danfoss Defendants.

In this case, GE's allegations include that Defendants "exchanged emails with false subject lines as code for conspiracy-related communications."  (Compl. at ¶ 138).  That allegation is very similar to the allegation found sufficient in *Carrier.*

GE's Complaint also includes allegations that Embraco, ACC, and Panasonic entered into contracts that were subject to terms and conditions under which the suppliers (Embraco, ACC and Panasonic) warranted that they had not engaged in any sharing of prices, costs, or other competitive information, and those terms and conditions were used from 1999 to 2004.  GE alleges those representations of non-collusion were false and fraudulent, in that the Defendants were colluding and agreeing to fix prices, and that these actions fraudulently concealed the existence of the conspiracy.  (Compl. at ¶¶ 141-47).

Like the DP Plaintiffs, GE's Complaint alleges that Defendants made representations that their pricing activities were based on market forces and it alleges that the Defendants concealed their conspiracy by announcing higher price increase ranges than the agreed-upon price ranges.  But unlike the DP Plaintiffs, GE's Complaint does not group all Defendants together, without allegations as to the various Defendants.  Rather, GE's Complaint includes allegations as to specific dates on which these actions were taken.  (Compl. at ¶¶ 148-171).

24

This Court concludes that GE has sufficiently alleged wrongful concealment at this early stage of the litigation.

**b.      Due Diligence**

In deciding whether GE satisfied its burden as to this element, this Court again looks to *Carrier*. *Carrier,* 673 F.3d at 448-49 (declining to hold that the plaintiffs' efforts were insufficient to satisfy this element "at such an early stage of litigation and without the benefit of discovery" to guide its analysis.).

"[I]n evaluating the due-diligence element, the court should evaluate such acts of active concealment as a factor in determining whether the plaintiff's investigation was reasonable under the circumstances*." Carrier Corp.*, 673 F.3d at 447 (citing *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1128 (6th Cir.1982)). "Thus '[a]ctions such as would deceive a reasonably diligent plaintiff will toll the statute; but those plaintiffs who delay unreasonably in investigating circumstances that should put them on notice will be foreclosed from filing, once the statute has run.'" *Id.*

In *Carrier,* the Sixth Circuit was satisfied that due diligence had been pleaded because the plaintiff detailed, in its complaint, the steps it had taken once if became aware of the Commission of the European Communities' investigation. *Carrier,* 673 F.3d at 448.  The *Carrier* Court then explained:

> We are not prepared to conclude that such efforts were insufficient to satisfy *Dayco's* "due diligence" requirement at such an early stage of litigation and without the benefit of discovery. *Cf. Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir.1984) (noting the panel's reluctance to dismiss fraudulent-concealment allegations prior to discovery); *Duncan v. Leeds*, 742 F.2d 989, 993 (6th Cir.1984) (addressing the need to construe allegations of fraudulent concealment liberally and in the plaintiff's favor at such an early stage

> in the litigation). Although we may dismiss a claim of fraudulent concealment
> when it is obvious from the complaint that the plaintiff conducted absolutely no
> investigation, *see, e.g., Ruth v. Unifund CCR Partners*, 604 F.3d 908, 911–14 (6th
> Cir.2010), when there is some question as to the depth and scope of that
> investigation, a plaintiff should be allowed to proceed forward. We therefore
> conclude that, taking the allegations in Carrier's favor as we must at this stage in
> the litigation, Carrier has adequately pleaded its fraudulent-concealment claim,
> and its cause of action should not be dismissed as time-barred.

*Carrier*, 673 F.3d at 448-49.

The same is true here.  That is, taking the allegations in GE's Complaint true as to: 1) the actions it took prior to governmental investigations (i.e., getting non-collusion warranties, seeking explanation about prices, etc.); and 2) the actions it took after it learned that the Department of Justice had commenced an antitrust investigation concerning the compressor industry (ie., starting its own investigation, monitoring the class actions and criminal investigations, hiring outside counsel to pursue a cooperation agreement with a suspected conspirator, *see* Compl. at ¶¶ 141-47, 159-71, 183-194, 198-202), that is sufficient at this early stage of the litigation under *Carrier.  See also Lutz v. Chesapeake Appalachia, LLC,* 717 F.3d 459, 476 (6th Cir. 2013) ("these are questions for summary judgment or for trial, and they should not be resolved on a motion to dismiss.  Where there is 'some question as to the depth and scope of [the plaintiffs'] investigation, [the plaintiffs] should be allowed to proceed forward.'").


## III.     Are GE's Common Law Fraud And Conspiracy Claims Barred Entirely Or Severely Limited By The Statute Of Limitations?

Again, GE's Complaint asserts three causes of action:  1) "Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1," its First Cause of Action; 2) "Fraud," its Second Cause of Action; and 3) "Conspiracy," its Third Cause of Action.  The parties agree that the Second and Third

Causes of Action are brought under Kentucky law. Defendants challenge of both of these state-law claims.

### A.        State-Law Fraud Count

Defendants contend that GE's fraud claim against them is time-barred.

In responding to this challenge, GE asserts that Defendants ignore "that a fraud claim does not accrue 'until discovery of the fraud,' and that a plaintiff may reach fraud committed up to 10 years before a complaint is filed." (GE's Br. at 19). GE's brief does not, however, direct the Court to any fraud allegations as to the Danfoss Defendants that occurred within ten years of the filing of its complaint.

In their Reply Brief, Defendants state that "GE's claim that, under Ky. Rev. Stat. Ann. § 413.130(3), it can reach fraud committed ten years prior to the Complaint, is of no assistance to GE since the only fraud that could possibly be alleged against Danfoss is based on sales between 1996 and 1998 (Compl. ¶ 33), which is more than ten years prior to the Complaint." (Defs.' Reply Br.). The Court agrees.

According to Kentucky law, an "action for relief or damages on the ground of fraud or mistake "shall be commenced within five (5) years after the cause of action accrued." K.R.S. 413.120(12). The Kentucky accrual statute relating to a claim for fraud provides that in "an action for relief or damages for fraud or mistake, referred to in subsection (12) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. *However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud*." K.R.S. 413.130(3) (emphasis added). Thus, the statute "provides an exception to § 412.130(3) as well as *an absolute limitation* on a fraud

27

claim." *500 Associates, Inc. v. Vermont American Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012) (emphasis added).

With respect to the Danfoss Defendants, GE's fraud claim appears to be based on its sales of refrigerant compressors to GE "each year from 1996 to 1998." (GE's Compl. at ¶ 33). GE does not affirmatively state when it discovered its fraud claim but states that "[e]ven if Danfoss were right that GE 'discovered its claim' in February 2009," its claim against Danfoss is still timely. (GE's Reply Br. at 19). But "[e]ven if [GE] never discovered the fraud, the accrual statute provides a ten year limit 'after the time of making the contract or the perpetration of the fraud.' K.R.S. 413.130(3). Thus, the time limit would have expired" in 2008 at the latest. *Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 274 (6th Cir. 2001). The Court concludes that GE's fraud claim against the Danfoss Defendants is barred by the statute of limitations. *Id.*; K.R.S. 413.130(3).

### C.    State-Law Conspiracy Count

As to this count, Defendants assert that it is "barred entirely or substantially limited by the statute of limitations. Because a one year statute of limitations applies to GE's conspiracy claim (Ky. Rev. Stat. Ann. § 413.140) and GE filed its Complaint more than one year after GE's discovery of the conspiracy in February 2009, such claim is barred by the statute of limitations." (Defs.' Br. at 25).

In response, GE asserts that "under Kentucky law, the limitations period does not begin 'until the last overt act performed in compliance with the objective of the conspiracy has been accomplished.' *Dist. Union Local 227 v. Fleischaker*, 384 S.W.2d 68, 72 (Ky. 1964). GE has alleged that the cartel agreed to allocate the market for high-efficiency, variable-speed

28

compressors and delayed GE's access to them even up to the date GE's Complaint was filed in February 2013. (Compl. ¶¶ 75, 79)."  (GE's Br. at 19-20).  GE further asserts that its state-law conspiracy claim is also timely because fraudulent concealment tolled the limitations period. (GE's Br. at 20).

Given the Court's ruling that GE has sufficiently pleaded fraudulent concealment for purposes of its conspiracy claim under the Sherman Act, it also finds this challenge without merit.

## IV.     Personal Jurisdiction

Also included in this motion was a challenge to this Court's exercise of personal jurisdiction over Defendant Danfoss Flensburg GmbH.  In Defendants' Reply Brief, however, Flensburg appears to agree that personal jurisdiction can be exercised over it, due to "its alleged sales of household compressors in the U.S.," "if the appropriate conspiracy period encompasses years in the 1990s."  (Defs.' Reply Br. at 14 n.12).  Given the Court's ruling on fraudulent concealment, this challenge fails.

## CONCLUSION & ORDER

For the reasons stated above, the Court hereby **DECLINES TO RULE** on the issues of whether GE has federal antitrust standing to assert claims based on MABE purchases, and whether those purchases are barred under the FTAIA, until after both parties have had an opportunity to file a supplemental brief addressing *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816 (7th Cir. Jan. 12, 2015).   The Court **ORDERS** that: 1) Defendants shall file a supplemental brief, of no more than eight (8) pages, addressing the above issues and case, no later than **April 3, 2015**; and 2) GE shall file a supplemental brief, of no more than eight (8)

pages, addressing the above issues and case, no later than **April 3, 2015**.

**IT IS FURTHER ORDERED** that:

1) this Court **RULES** that GE is not entitled to tolling under the "*American Pipe* tolling doctrine," but that GE is entitled to Section 5(i) tolling, as set forth in this Opinion and Order;

2) this Court **REJECTS** Defendants' argument that GE cannot pursue damages for the time period after February 2009 and also **RULES** that, at this stage of the litigation, GE has sufficiently alleged fraudulent concealment for the time period preceding September 2006;

3) with respect to GE's state-law fraud claim, the Court **RULES** that claim is barred by the applicable statute of limitations;

4) the Court **REJECTS** Defendants' statute of limitations challenge to the state-law conspiracy count; and

5) the Court **REJECTS** Defendant Danfoss Flensburg GmbH's personal jurisdiction challenge.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 13, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Refrigerant Compressors                    Case No. 2:09-md-02042
Antitrust Litigation
                                                  Honorable Sean F. Cox
                                                  United States District Court

_____/

**PROOF OF SERVICE**

    I hereby certify that a copy of the foregoing document was served upon counsel of record

on March 13, 2015, by electronic and/or ordinary mail.

                      S/Jennifer McCoy_____
                      Case Manager