UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Refrigerant Compressors　　　　　　Case No. 2:09-md-02042
Antitrust Litigation

　　　　　　　　　　　　　　　　　　　　Honorable Sean F. Cox
　　　　　　　　　　　　　　　　　　　　United States District Court

_____/

# OPINION & ORDER

　　　　The Indirect Purchaser and Direct Purchaser putative class action cases in this multidistrict litigation ("MDL") proceeding have been resolved.  All that remains in this MDL proceeding is Plaintiff General Electric Company's ("GE") individual claims.  GE asserts claims against Defendants Danfoss A/S, Danfoss Flensburg GmbH, and Danfoss, LLC (collectively the "Danfoss Defendants").  GE is pursuing its claims against the Danfoss Defendants on its own behalf after having opted out of the Direct Purchaser Class Action Settlement.[1]

　　　　The matter is currently before the Court on a "Motion By Defendants Danfoss Flensburg GMBH And Danfoss LLC To Dismiss The Complaint" (Docket Entry No. 470/64) which asserts several grounds for relief.  This Court already issued an Opinion & Order that addressed the majority of the issues raised in this motion.  As explained in that Opinion, however, this Court declined "to rule on two issues (whether GE has federal antitrust standing to assert claims based on MABE purchases and whether those purchases are barred under the Foreign Trade Antitrust Improvement Act) until after the parties had the opportunity to file supplemental briefs

---

　　　　[1]GE asserted claims against the Whirlpool Defendants but those claims have been settled.  GE also asserts claims against the ACC Defendants and GE has a default judgment as to liability against ACC.

1

addressing a relevant decision in a Seventh Circuit case," *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015). (Docket Entry No. 535 at 1-2). The parties have since filed supplemental briefs addressing those issues. (Docket Entry Nos. 541 & 542). Thus, the issues have been exhaustively briefed.

The Court finds that oral argument would not aid the decisional process and orders that the remaining issues in the motion will be decided upon the briefs. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds the Seventh Circuit's decision in *Motorola* persuasive and concludes that GE cannot treat MABE, its minority-owned foreign manufacturing subsidiary, as an extension of itself for purposes of satisfying the FTAIA or avoiding the indirect-purchaser-standing rule. The Court will grant the Danfoss Defendants' motion, to the extent that it rules that GE cannot pursue federal antitrust claims against the Danfoss Defendants that are based upon MABE's purchases of refrigerant compressors.

## BACKGROUND

There is a lengthy history to this MDL proceeding. The Court includes here only those facts that are relevant for purposes of determining the remaining issues before the Court.

GE filed its Complaint on February 15, 2013, in the United States District Court for the Western District of Kentucky, Louisville Division. The action was transferred to this Court by a June 17, 2013 Order of the United States Judicial Panel on Multidistrict Litigation, which transferred the action to this Court for inclusion in the coordinated or consolidated pretrial proceedings in this MDL proceeding, which began back in 2009.

GE's eighty-three page Complaint asserts claims against three different groups of

Defendants: 1) the "Embraco Defendants," which include Whirlpool Corporation, Whirlpool S.A., and Embraco North America, Inc.; 2) the "Danfoss Defendants," which include Danfoss A/S, Danfoss Flensburg GMBH, and Danfoss, LLC; and 3) the "ACC Defendants," which include Household Compressors Holding SpA, and ACC USA, LLC. GE's Complaint summarizes the nature of the action as follows:

1. This lawsuit arises from a long-standing cartel created, maintained, and enforced by the Defendants and their co-conspirators (collectively, the "Conspirators") for anticompetitive acts and behavior. They have agreed to, and in fact did, illegally inflate, raise, fix, and artificially stabilize the price of refrigerant compressors sold in the United States and elsewhere in the world. The Defendants also have agreed to, and in fact did illegally, restrict capacity, restrict innovation, stabilize market shares, allocate customers, territories, and product types, and otherwise restrain competition in the manufacture and sale of refrigerant compressors in the United States and elsewhere in the world. The result of the Conspirators' conduct has been to raise the prices paid by their customers, including Plaintiff, to supra-competitive levels, reducing the attractiveness of their customers' products in terms of price and quality, and thereby damaging their customers' businesses. The cartel started at least as early as January 1, 1996 and the cartel and its effects will continue at least into 2013 (the "conspiracy period"). The exact dates of the conspiracy period are not known to Plaintiff, but are likely to be revealed during the course of discovery in this litigation.

2. A refrigerant compressor, in the context of this case, is a device that compresses a refrigerant gas. When the gas is later permitted to expand, it absorbs and thereby transfers heat, producing a cooling effect used in a wide variety of refrigeration products. For example, refrigerant compressors are used in household refrigerators, in which the compressors are part of the system that creates cold air that keeps food fresh or frozen.

3. During the conspiracy period, Defendants and their co-conspirators Tecumseh and Panasonic have dominated the global and U.S. markets for refrigerant compressors. Indeed, the three largest suppliers to the U.S. market – Embraco, Panasonic, and Tecumseh – had as of 2008

> a collective market share in the United States of approximately 85%.
>
> 4. Plaintiff General Electric Company is one of the largest manufacturers and sellers of refrigeration equipment in the United States. As such, it is one of the largest purchasers of refrigerant compressors in the United States. Plaintiff General Electric Company has been a target and a victim of the Conspirators' cartel. In particular, Plaintiff is one of the largest manufacturers of household refrigerators in the United States and globally, and throughout the conspiracy period, household refrigerators manufactured and/or sold by Plaintiff have included refrigerant compressors supplied by Conspirators. As a result of the cartel, Plaintiff has paid supra-competitive prices for compressors and has been deprived of innovation that would have resulted in increased efficiency, as well as increased sales and profits, in its sales of refrigerators and other refrigeration equipment.

(Compl. at 1-2).

GE's Complaint asserts three causes of action: 1) "Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1," its First Cause of Action; 2) "Fraud," its Second Cause of Action; and 3) "Conspiracy," its Third Cause of Action.

GE's Complaint contains allegations regarding "MABE purchases" that are relevant to the limited issues currently before the Court. GE's Complaint alleges that, throughout the conspiracy period, "GE has been a minority owner of a joint venture named Controladora Mabe, S.A. de C.V. ('MABE')." (Compl. at ¶ 46). GE alleges that "[d]uring the conspiracy period (and today), GE has owned (and today owns) slightly more than 48% interest in MABE. GE also has minority representation on MABE's board of directors, and a veto right with respect to some unspecified "categories of board decisions." (*Id.*).

GE alleges that as part of its joint venture relationship with GE, during the conspiracy period MABE has manufactured residential refrigerators for GE for sale in the United States

pursuant to contract manufacturing agreements between GE and Mabe." (Compl. at ¶ 47). It also alleges that GE's procurement teams in the United States have controlled and determined the price and quantity of refrigerant compressors MABE has incorporated into refrigerators it has manufactured for sale by GE in the United States.

This Court previously issued an Opinion & Order that addressed multiple issues raised in a "Motion By Defendants Danfoss Flensburg GMBH And Danfoss LLC To Dismiss The Complaint" (Docket Entry No. 470/64). As explained in that Opinion, this Court declined to rule on two issues (whether GE has federal antitrust standing to assert claims based on MABE purchases and whether those purchases are barred under the Foreign Trade Antitrust Improvement Act) until after the parties have had the opportunity to file supplemental briefs addressing the Seventh Circuit's decision" in *Motorola*. The parties have since filed supplemental briefs addressing those issues. (Docket Entry Nos. 541 & 542). [2]

## STANDARD OF DECISION

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,

---

[2]In addition to their supplemental brief, the Danfoss Defendants filed two exhibits that GE filed objections to: 1) a "MABE Offering Memorandum" (Docket Entry No. 542-9); and 2) a Declaration from Mauricio Serralde Rodriguez, with Exhibits B-C to the Declaration (Docket Entry No. 541-10). The Danfoss Defendants responded to those objections. (Docket Entry No. 549). But because the Court's analysis does not consider those items, the Court need not address those objections.

1948 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

## ANALYSIS

The only issues that remain with respect to the Motion to Dismiss at bar are the Danfoss Defendants' challenges to GE's ability to assert federal antitrust claims based on MABE's refrigerant compressor purchases.

GE "is one of the largest manufacturers and sellers of refrigeration equipment in the United States. As such, it is one of the largest purchasers of refrigerant compressors in the United States." (Compl. at ¶ 4).

In this case, GE accuses foreign manufacturers of refrigerant compressors of having violated section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring and agreeing with each other on the prices they would charge for refrigerant compressors. The alleged conspirators are the named defendants in GE's complaint, including the Danfoss Defendants.

GE manufactured a substantial portion of its refrigerators in the United States, using compressors GE purchased from the alleged conspirators. (GE's Br., D.E. No. 541 at Pg ID 15382). The Danfoss Defendants have not argued that the FTAIA bars GE's federal antitrust

claims concerning those purchases of compressors.

But the Danfoss Defendants assert that the FTAIA bars GE's federal antitrust claims based upon its purchases of refrigerators from MABE, a joint venture in which GE has a minority interest. Thus, the issues that remain before this Court involve only GE's federal antitrust claims concerning its MABE purchases

This Court allowed the parties to file supplemental briefs as to whether GE has federal antitrust standing to assert claims based on MABE purchases and whether those purchases are barred under the FTAIA. The issues have been exhaustively briefed and are ripe for a decision by this Court.

As explained below, this Court finds the Seventh Circuit's decision in *Motorola* persuasive and concludes that GE cannot treat MABE, its minority-owned foreign manufacturing subsidiary, as an extension of itself for purposes of satisfying the FTAIA or avoiding the indirect-purchaser-standing rule. The Court will therefore grant the Danfoss Defendants' motion, to the extent that it rules that GE cannot pursue federal antitrust claims against the Danfoss Defendants that are based upon MABE's purchases of refrigerant compressors.

I.      **The Seventh Circuit's Decision in *Motorola***

The issues currently before this Court, concerning the FTAIA and the *Illinois Brick* indirect-purchaser limit[3] on who has standing to sue for antitrust damages were both before the

---

[3]Under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977), only direct purchasers of an allegedly price-fixed product may pursue private actions for monetary damages under federal antitrust laws.

Seventh Circuit, for a second time[4], in *Motorola*. *Motorola Mobility, LLC v. Au Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015). The Seventh Circuit issued that amended opinion after having allowed several parties, including the U.S. Department of Justice, to file amicus curiae briefs.

In that case, Motorola (a United States company) accused foreign manufacturers of LCD panels (a component used to make finished cell phones) of having violated section 1 of the Sherman Act by conspiring and agreeing with each other on the prices they would charge for the panels. There was no dispute that Motorola could pursue federal antitrust claims with respect to any panels that Motorola purchased itself and then used to make cellphones. But Motorola also wanted to pursue federal antitrust claims based upon panels that Motorola's wholly-owned Asian subsidiaries had purchased from the alleged conspirators in Asia, which those subsidiaries then used in Asia to make cellphones that they ultimately sold to and shipped to Motorola in the United States. The district court ruled that Motorola's claim based on those sales was barred by the FTAIA.

The Seventh Circuit affirmed the district court's ruling, holding that the defendants' sale of price-fixed panels to foreign purchasers did not give rise to a federal antitrust claim. It concluded that a U.S. parent corporation like Motorola could not treat its foreign manufacturing subsidiaries (who were the direct purchasers of the allegedly price-fixed component at issue) as mere extensions of itself for purposes of either: 1) satisfying the FTAIA; or 2) avoiding the *Illinois Brick* indirect-purchaser standing rule.

---

[4]The initial decision in the case, *Motorola Mobility LLC v. Au Optronics Corp.*, 746 F.3d 842 (7th Cir. 2014), was issued without oral argument and without the panel having heard from other interested parties.

### A. Motorola's Claims Were Barred By The FTAIA

The Seventh Circuit noted that district court had "ruled that Motorola's suit, insofar as it relates" to the "panels purchased by the foreign subsidiaries, is barred by 15 U.S.C. §§ 6a(1)(A), (2), which are sections of the" FTAIA. *Motorola*, 775 F.3d at 818. The court noted that the FTAIA "has been interpreted, for reasons of international comity (that is, good relations among nations), to limit the extraterritorial application of U.S. antitrust law" and explained:

> Sections 6a(1)(A) and (2) provide that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless ... such conduct has a direct, substantial, and reasonably foreseeable effect ... on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations," and also, in either case, unless the "effect [on import trade or domestic commerce] gives rise to a claim" under federal antitrust law. *See, e.g., F. Hoffmann–La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161–62, 124 S.Ct. 2359, 159 L.Ed.2d 226 (2004); *Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 853–54 (7th Cir.2012) (en banc).
>
> It is essential to understand that these are two requirements. There must be a direct, substantial, and reasonably foreseeable effect on U.S. domestic commerce—the domestic American economy, in other words—*and* the effect must give rise to a federal antitrust claim. The first requirement, if proved, establishes that there is an antitrust violation; the second determines who may bring a suit based on it.

*Id.* at 818 (emphasis in original).

The Court then concluded that the import commerce exception did not apply with respect to the sales at issue. It explained that "[h]ad the defendants conspired to sell LCD panels to Motorola in the United States at inflated prices, they would be subject to the Sherman Act because of the exception in the Foreign Trade Antitrust Improvements Act for importing" and that scenario was the situation with respect to panels purchased by Motorola that were not

9

involved in the appeal. *Id.* As to the panels that were purchased abroad and made their way into the United States as part of completed cell phones, however, "Motorola is wrong to argue that it is import commerce. It was Motorola, rather than the defendants, that imported these panels into the United States, as components of the cellphones that its foreign subsidiaries manufactured abroad and sold and shipped to it."[5]

As a result, the Seventh Circuit proceeded to consider whether the two requirements were met. It noted that Motorola "first must show that the defendants' price fixing of the panels that they sold abroad and that became components of cellphones also made abroad but imported by Motorola into the United States had 'a direct, substantial, and reasonably foreseeable effect' on commerce within the United States." *Id.* The Seventh Circuit ultimately assumed, without deciding, that "the requirement of a direct, substantial, and reasonably foreseeable effect on domestic commerce" was satisfied. *Id*. at 819.

But that did not help Motorola because "[w]hat trips up Motorola's suit is the statutory requirement that the effect of anticompetitive conduct on domestic U.S. commerce give rise to an antitrust cause of action. 15 U.S.C. § 6a(2)." *Id*. at 819. That is, Motorola could not meet the second requirement – that it is Motorola who may bring a federal antitrust suit for this alleged violation.

The court explained that the defendants' alleged "conduct increased the cost to Motorola

---

[5]The Seventh Circuit rejected Motorola's "target theory" as to antitrust liability. *See, e.g.*, *Motorola,* 755 F.3d at 822 ("Motorola's 'target' theory of antitrust liability would nullify the doctrine of *Illinois Brick*."). Moreover, in this case the plaintiff's target theory is even weaker because GE has not made any specific allegations that any Danfoss entity targeted GE or MABE or sold compressors to MABE during the time of the alleged conspiracy. (*See* Def.'s Br., D.E. No. 542, at 8).

of the cellphones that it bought from its foreign subsidiaries, but the cartel-engendered price increase in the components and in the price of cellphones that incorporated them occurred entirely in foreign commerce." *Id*. Thus, Motorola's foreign subsidiaries were the direct purchasers of the price-fixed panels and this was fatal to Motorala's attempt to assert claims based on those purchases:

> Whether or not Motorola was harmed indirectly, the immediate victims of the price fixing were its foreign subsidiaries, *see F. Hoffmann–La Roche Ltd. v. Empagran S.A., supra*, 542 U.S. at 173–75, 124 S.Ct. 2359, and as we said in the *Minn–Chem* case "U.S. antitrust laws are not to be used for injury to foreign customers," 683 F.3d at 858. Motorola's subsidiaries are governed by the laws of the countries in which they are incorporated and operate; and "a corporation is not entitled to establish and use its affiliates' separate legal existence for some purposes, yet have their separate corporate existence disregarded for its own benefit against third parties." *Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp*., 97 F.3d 377, 380 (9th Cir. 1996). For example, although for antitrust purposes Motorola contends that it and its subsidiaries are one (the "it" we referred to earlier), for tax purposes its subsidiaries are distinct entities paying foreign rather than U.S. taxes.
>
> Distinct in *uno*, distinct in *omnibus*. Having submitted to foreign law, the subsidiaries must seek relief for restraints of trade under the laws either of the countries in which they are incorporated or do business or the countries in which their victimizers are incorporated or do business. The parent has no right to seek relief on their behalf in the United States.

*Id.* at 820.

"If Motorola's foreign subsidiaries have been injured by violations of the antitrust laws of the countries in which they are domiciled, they have remedies; if the remedies are inadequate, or if the countries don't have or don't enforce antitrust laws, these are consequences that Motorola committed to accept by deciding to create subsidiaries that would be governed by the laws of those countries." *Id*. at 821.

### B. Motorola's Claims Were Also Barred By The *Illinois Brick* Indirect Purchaser Rule

The Seventh Circuit explained that a "related flaw in Motorola's case is its collision with the indirect-purchaser doctrine of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which forbids a customer of the purchaser who paid a cartel price to sue the cartelist, even if his seller—the direct purchaser from the cartelist—passed on to him some or even all of the cartel's elevated price. Motorola's subsidiaries were the direct purchasers of the price-fixed LCD panels, Motorola and its customers indirect purchasers of the panels." *Id*. at 821.

In concluding that Motorola lacked federal antitrust standing, as an indirect purchaser of the panels that its foreign subsidiaries had directly purchased abroad, the Seventh Circuit rejected Motorola's "target theory" as to why it should be deemed to have standing. *Id.* at 822 ("Motorola's 'target theory of antitrust liability would nullify the doctrine of *Illinois Brick*.").

## II. GE's MABE Claims Are Likewise Barred By The FTAIA And The *Illinois Brick* Indirect Purchaser Standing Rule

Notably, *Motorola* involved a *closely analogous* situation as to that presented here. And given that the same counsel represented the plaintiffs in both cases, the same arguments have been made by the plaintiffs in both cases. The Danfoss Defendants' brief illustrates this with a helpful graphic that the Court summarizes below:

| KEY FACTS | *MOTOROLA* | THIS CASE |
|---|---|---|
| The Plaintiff: | Motorola, a US Company | GE, a US Company |
| Plaintiff's Affiliate at Issue: | Foreign (Asian) | Foreign (Mexican) |
| Alleged Conspirators: | Foreign (Various) | Foreign (Various) |
| Transaction at Issue: | Purchase/Sale of cell phone component | Purchase/Sale of refrigerator component |
| Direct Seller: | Foreign (Various) | Foreign (Various) |
| Point of Sale: | Foreign (Asia) | Foreign (Mexico) |
| Delivery Location: | Foreign (Asia) | Foreign (Mexico) |
| Product Shipped to Plaintiff in U.S.: | Finished Cell Phone | Finished Refrigerator |
| Manufacturing Location of Product Shipped to U.S.: | Foreign (Asia) | Foreign (Mexico) |
| Manufacturer of Product shipped to Plaintiff in U.S.: | Foreign (Asia) Wholly-Owned subsidiaries of Plaintiff | Foreign (Mexico) Minority-Owned subsidiary of Plaintiff |
| Plaintiff's Involvement in Affiliate's Negotiations with alleged Conspirators: | Plaintiff participated in negotiations on price and volume of component purchases by its subsidiaries from its U.S. location | Nearly identical allegations regarding negotiations. |
| Counsel for Plaintiff: | Crowell & Moring LLP | Crowell & Moring LLP |

### A. GE's MABE Claims Are Barred By The FTAIA

The Court concludes that GE's federal anti-trust claims, to the extent that they are based upon MABE's purchases of refrigerant compressors, are barred by the FTAIA for the same reason that Motorola's claims based on panel sales to its foreign subsidiaries were barred in *Motorola.*

Again, the FTAIA limits the extra territorial application of United States antitrust law. *Motorola*, 775 F. 3d at 818. As explained in *Motorola*:

> Sections 6a(1)(A) and (2) provide that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import

> commerce) with foreign nations unless ... such conduct has a direct, substantial, and reasonably foreseeable effect ... on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations," and also, in either case, unless the "effect [on import trade or domestic commerce] gives rise to a claim" under federal antitrust law. *See, e.g., F. Hoffmann–La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161–62, 124 S.Ct. 2359, 159 L.Ed.2d 226 (2004); *Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 853–54 (7th Cir.2012) (en banc).
>
> It is essential to understand that these are two requirements. There must be a direct, substantial, and reasonably foreseeable effect on U.S. domestic commerce—the domestic American economy, in other words—*and* the effect must give rise to a federal antitrust claim. The first requirement, if proved, establishes that there is an antitrust violation; the second determines who may bring a suit based on it.

*Id*. at 818 (emphasis in original).

With respect to any refrigerant compressors that the defendant manufacturers conspired to sell to GE in the United States at inflated prices, those sales are subject to the Sherman Act because of the exception in the FTAIA for importing. *Motorola, supra,* at 818. That is, the importing exception to the FTAIA applies to those sales.

With respect to refrigerant compressors that MABE purchased in Mexico, however, those sales do not constitute import commerce for the same reason the analogous sales in Motorola did not. Those sales do not constitute import commerce because it was GE, and not the defendant compressor manufacturers, who imported those compressors into the United States, as components of the refrigeration products that GE's foreign subsidiary (MABE) manufactured abroad and sold and shipped to GE in the United States. *Id.*

As a result, this Court proceeds to consider whether the two requirements above were met. GE "first must show" that the defendants' price fixing of the refrigerant compressors that

they sold abroad and that became components of refrigerators also made abroad but imported by GE into the United States had "a direct, substantial, and reasonably foreseeable effect'" on commerce within the United States. *Motorola,* 775 F.3d at 818. But even if this Court follows the Seventh Circuit's approach and assumes without deciding that it does, that does not aid GE. *Id.* at 819.

Like *Motorola,* what "trips up" GE's MABE claim "is the statutory requirement that the effect of anticompetitive conduct on domestic U.S. commerce give rise to an antitrust cause of action. 15 U.S.C. § 6a(2)." *Motorola,* 775 F.3d at 819. Like Motorola, GE cannot meet the second requirement – that it is GE who may bring a federal antitrust suit for this alleged violation.

Like the situation in *Motorola*, the Defendants' alleged antitrust conduct increased the cost to GE of the refrigerators that it bought from its foreign subsidiary MABE, but the cartel-engendered price increase in the refrigerant compressors and in the price of refrigerators that incorporated them occurred entirely in foreign commerce. *Id.* Thus, GE's foreign subsidiary (MABE) was the direct purchaser of the allegedly price-fixed refrigerant compressors and that is fatal to GE's attempt to assert claims based on MABE's purchases.

Having submitted to Mexican law, MABE must seek relief for restraints of trade under the laws either of the country in which it is incorporated and does business (Mexico) or the countries in which their victimizers are incorporated or do business. As was the case in *Motorola,* if GE's minority owned subsidiary (MABE) has been injured by violations of the antitrust laws of Mexico, its remedies are found there. GE has no right to seek relief on MABE's behalf in the United States. *Id.* at 820.

### B.     GE's MABE Claims Are Also Barred By The *Illinois Brick* Indirect Purchaser Rule

The Danfoss Defendants contend that "[b]ecause GE admits that MABE, a Mexican corporation, was the direct purchaser from Defendants of compressors (Compl. ¶49-53, 55), GE has no standing to sue with respect to those sales." (Defs.' Br., D.E. No. 470 at 5).

This Court addressed the *Illinois Brick* indirect purchaser rule previously in this same MDL litigation. *See In re Refrigerant Compressors Antitrust Litig.*, 795 F.Supp.2d 647 (E.D. Mich. 2011). That opinion addressed a challenge to the "direct purchaser" putative class action complaint, which sought to assert federal antitrust claims on behalf of persons or entities who directly purchased the allegedly price-fixed compressors and persons or entities who had purchased finished products that contained a refrigerant compressor. This Court concluded "that the only persons or entities who have standing to assert federal antitrust claims in this action are those persons or entities who directly purchased compressors from a defendant." *Id.* at 658. As such, this Court will not include the entire discussion of the rule and its history here.

Under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977), only direct purchasers of an allegedly price-fixed product may pursue private actions for monetary damages under federal antitrust laws. "While the Supreme Court has expressed reluctance in carving out exceptions to the Illinois Brick rule, limited exceptions do exist." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741,749 (9th Cir. 2012).

GE argues that its "indirect MABE purchases" fall under the so-called "control

16

exception"[6] alluded to in a footnote in *Illinois Brick*. *Illinois Brick*, 431 U.S. at 736 n.16. (Pl.'s Br., D.E. No. 41 at 11).

But the Sixth Circuit has construed the "control exception" as being "limited to relationships involving such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale." *Jewish Hosp. Ass'n of Louisville, Ky v. Stewart Mech. Enters.*, 628 F.2d 971, 975 (6th Cir. 1980).

The Danfoss Defendants' brief states that they are unaware of any case wherein "the Sixth Circuit has permitted an indirect purchaser claim to proceed under the control exception since *Jewish Hospital* (which itself ruled against the control exception)" and they assert that "GE has not made any allegation to warrant doing so for the first time in this case." (Defs.' Br., D.E. No. 542, at 16).

The Court agrees with the Danfoss Defendants. GE alleges that it owns a minority interest in MABE, has minority representation on MABE's board of directors, and has a veto right with respect to some unspecified categories of board decisions. (Compl. at ¶ 46). GE also asserts that it participated with respect to negotiations with the alleged conspirators at to the price and volume of compressor purchases by MABE. The Court concludes that such allegations are insufficient to establish "such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale." [7]

---

[6]GE abandoned its prior assertion that the "cost-plus" exception applies.

[7]Moreover, to the extent that GE asserts that it needs discovery on this issue, the Court disagrees. This is especially so given that all of the relevant evidence as to relationship between

17

**CONCLUSION & ORDER**

For the reasons set forth above, the Court concludes that GE cannot treat MABE, its minority-owned foreign manufacturing subsidiary, as an extension of itself for purposes of satisfying the FTAIA or avoiding the indirect-purchaser-standing rule. The Court GRANTS the Danfoss Defendants' motion to the extent that it RULES that GE cannot pursue federal antitrust claims against the Danfoss Defendants that are based upon MABE's purchases of refrigerant compressors.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: October 21, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 21, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

---

GE and MABE is in GE's hands already. It would not get such discovery from the Danfoss Defendants.